UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff, | ) | 13 CR 250 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ANTHONY HOWELL, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Anthony Howell is charged with two counts of being a felon-in-possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Doc. 107. Howell has pleaded not guilty. Docs. 20, 114. A report prepared by Pretrial Services shows that Howell has sustained several convictions and over a dozen arrests. Doc. 8 at 4. Pertinent here, in 2005, Howell pleaded guilty to federal drug charges and was sentenced to a 90-month term of imprisonment and five years of supervised release. *Id*. at 5. According to the Probation Office, while still on supervised release, Howell was arrested by local police while carrying a firearm. *Id*. at 6. A federal arrest warrant issued and Howell was arrested. Doc. 5. He was ordered detained at his initial appearance in March 2013, Doc. 7, and has remained detained ever since.

Concerned about his mental state, the court conducted a competency hearing in April 2016. Doc. 171. Based on the evidence before it, the court determined that Howell suffered from schizophrenia (paranoid delusional thinking) and was not competent to stand trial. Pursuant to 18 U.S.C. § 4241(d), the court ordered him hospitalized to determine whether there was a substantial probability that he would regain competency in the future. Doc. 172. After staff at the Federal Medical Center in Butner, North Carolina, determined that Howell suffered

1

from schizophrenia, could regain competency if medicated, but would not voluntarily submit to medication, Govt. Exh. 3 at 7, the court asked for briefing and held argument on whether to order involuntary medication, Docs. 179, 203.

Before proceeding any further, a short detour concerning Howell's legal representation is in order. Howell initially was represented by retained counsel, Docs. 23-24, 33, whom he discharged, Doc. 60. The court then appointed, and Howell parted company with, two additional attorneys, Docs. 66, 76, 84, 92, and eventually he moved to represent himself, Doc. 93. In November 2015, the court conducted a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), and held that Howell was competent to represent himself. Doc. 92. In the ensuing months, the court came to believe that Howell was incompetent not only to represent himself, but also to stand trial, and therefore held the competency hearing referenced above. Docs. 161, 170-71.

It would be an understatement to say that this state of affairs cast doubt on whether Howell could continue to represent himself under *Faretta*. The court had previously appointed Christopher Graul to serve as standby counsel, Doc. 128, and ever since the court's incompetence finding, Graul has functionally served as Howell's attorney; for example, he makes arguments to the court directly on Howell's behalf, as opposed to being confined to advising Howell privately at counsel's table. But to ensure that Howell's self-representation right remains protected in the event the court erred in finding him incompetent, the court also has allowed Howell to file briefs and make arguments in open court. This hybrid representation is unusual, but the court has permitted it to be maximally protective of Howell's rights. If the court was correct to find Howell incompetent, he has enjoyed representation from Graul; and if the court was wrong to find him incompetent, he has retained his *Faretta* right to represent himself.

The involuntary medication issue is governed by *Sell v. United States*, 539 U.S. 166 (2003). *Sell* holds that a court may order involuntary medication to restore a criminal defendant's competency only if the government proves by clear and convincing evidence that: (1) there is an important governmental interest at stake; (2) involuntary medication will significantly further that interest, meaning that the medication is substantially likely to restore the defendant's competency; (3) involuntary medication is necessary to further the interest, meaning that less intrusive treatments are unlikely to achieve the same result; and (4) the medications are medically appropriate for the defendant. *Id*. at 180-81; *see also United States v. Breedlove*, 756 F.3d 1036, 1040 (7th Cir. 2014). The government has met its burden.

1. *Sell* holds that the government has an important interest in bringing a defendant accused of a "serious" crime to trial. 539 U.S. at 181. In determining whether a criminal charge is serious, the court looks first to the maximum statutory penalty. *See Breedlove*, 756 F.3d at 1041. Howell faces a maximum sentence of ten years on each of the two felon-in-possession charges against him, for a total maximum sentence of twenty years. *See* 18 U.S.C. § 924(a)(2). That is sufficient to indicate seriousness for *Sell* purposes. *See United States v. Mackey*, 717 F.3d 569, 573 (8th Cir. 2013) (holding that a ten-year statutory maximum is sufficient to indicate seriousness under *Sell*); *United States v. Palmer*, 507 F.3d 300, 303-04 (5th Cir. 2007) (same); *United States v. Evans*, 404 F.3d 227, 237-38 (4th Cir. 2005) (same).

That does not end the matter, however, for the court must also consider whether this case's particular circumstances lessen the importance of bringing Howell to trial despite the serious nature of the charges. *See Sell*, 539 U.S. at 180. Two circumstances bear exploration here. First, because Howell was previously convicted of a felony, any restrictions imposed by law on felons, including those on firearm possession, already apply to him, so an additional

felony conviction would not impose any further restrictions or provide any further protections in those respects. Second, although the statutory maximum for the current charges is twenty years, the court likely would impose a lesser sentence; according to the government, Howell's anticipated advisory guidelines range would be 51 to 63 months. Thus, given that Howell has been in pretrial detention for over four years, it is quite possible that by the time he is returned to competency and tried, and if he is found guilty, he would have already served or perhaps over-served his sentence.

Despite these circumstances, the court finds that the government has a significant interest in bringing Howell to trial. Given Howell's significant criminal history, which includes several convictions and more than a dozen arrests, Doc. 8 at 4-5, his previous violation of the terms of his supervised release, *id*. at 5, and his serious mental health issues, Howell almost certainly would require additional supervision, including mandatory mental health treatment and close monitoring by the Probation Office, upon his release from imprisonment were he convicted on the current charges. That supervision would not be possible if the government simply dismissed this case. (As the parties agreed, the maximum supervised release term for the 2005 federal conviction either has expired or soon will expire.) Moreover, it is unclear how much longer Howell could remain in custody without a trial. *See Jackson v. Indiana*, 406 U.S. 715, 731-33, 738 (1972) (discussing the serious due process concerns raised by indefinite pretrial detention of an incompetent defendant); *United States v. Shawar*, 865 F.2d 856, 863-64 (7th Cir. 1989) (citing *Jackson* for the proposition that the Supreme Court has disapproved of "indefinite commitment solely on grounds of incapacity"). For these reasons, the first *Sell* factor has been met by clear and convincing evidence.

2. The second *Sell* factor is satisfied only if the court finds by clear and convincing evidence that involuntary medication will significantly further the government's interest, meaning that the involuntary administration of drugs is substantially likely to render Howell competent. *See* 539 U.S. at 181. On this point, the government introduced a report authored by Robert Cochrane, Psy. D., and Bryon Herbel, M.D., regarding their evaluation of Howell, Govt. Exh. 3, and a study authored by Cochrane, Herbel, and others detailing the successes of involuntary medication under *Sell*, Govt. Exh. 2. Cochrane also testified telephonically at the hearing.

The Cochrane study demonstrates that involuntary medication enjoys significant success at restoring defendants to competency. Relevant here, the study found 76.5% of those with a schizophrenia diagnosis (Howell's diagnosis) were restored to competency. Govt. Exh. 2 at 7. This amply supports the conclusion that involuntary medication will restore Howell's competency; indeed, the Seventh Circuit has permitted district courts to credit this very study. *See Breedlove*, 756 F.3d at 1041-42; *United States v. Breedlove*, 2013 WL 12110538, *2 (N.D. Ill. Oct. 21, 2013).

Although the Cochrane study does not speak to Howell's individual circumstances, Cochrane's written report and testimony do, and they amply support the conclusion that involuntary medication would likely restore Howell to competency. The report notes that Howell's previous treatment with antipsychotic drugs was successful, yielding improvement in his paranoia and interactions with people. Govt. Exh. 3 at 16. Cochrane testified that Howell's prior successful use of antipsychotic drugs was a factor indicating that he would likely be responsive to treatment. Cochrane further testified that the intended effect of the proposed treatment plan, which he anticipates will last for at least eight weeks, is for Howell's symptoms

5

to "diminish or remit entirely so that he [will be] able to proceed in this case, understand both factually and rationally what [is] going on and being able to assist counsel in his defense. I've seen that many times before and that's what I would expect here." Cochrane added that the proposed medications were not likely to have side effects that would significantly interfere with Howell's ability to communicate with counsel. The court found Cochrane's testimony persuasive. Given the positive track record of individuals similarly situated to Howell, Howell's own past experiences with antipsychotic medication, and Cochrane's testimony that medication would allow Howell to "understand both factually and rationally what [is] going on and assist in … his … defense," the court finds by clear and convincing evidence that involuntary medication would further the government interest by making it substantially likely that Howell would return to competency.

    3. The third *Sell* factor asks whether viable alternatives to involuntary medication exist. 539 U.S. at 181. Cochrane's report considered two possible alternatives to involuntary medication: voluntary medication backed by a contempt order, and psychotherapy. Govt. Exh. 3 at 16-18. The report concluded that issuing a contempt order and asking Howell to voluntarily comply is not likely to have the desired effect because he continues to refuse to voluntarily take medication and suffers from delusional beliefs. *Id*. at 16-17. The report also concluded that while psychotherapy can be a component of schizophrenia treatment, the expert consensus is that medication is required as well. *Id*. at 17-18. When testifying, Cochrane added that he was unaware of any court-appointed guardian or advance directive which might permit Howell to be medicated without a court order. Based on this clear and convincing evidence, the court finds that there is no viable alternative to involuntary medication, and the third *Sell* factor is satisfied.

6

4. The fourth and final *Sell* factor asks whether "administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." *Breedlove*, 756 F.3d at 1043. According to the Cochrane report, data supports the conclusion that antipsychotic medications are effective and generally safe. Govt. Exh. 3 at 18-19. The report acknowledges potential side effects, but offers proposed management strategies. *Ibid*. And the report states that certain drugs will be used only if Howell is willing to submit to cardiac testing beforehand in order to reduce the risk of any cardiac consequences. *Id*. at 19. As noted, Howell has been treated with antipsychotics before without significant side effects. Cochrane testified that, after consulting with colleagues, he came to the conclusion that given Howell's overall good health and the available data concerning antipsychotics, treatment with those drugs would be medically appropriate. The court is persuaded and therefore finds by clear and convincing evidence that the fourth *Sell* factor is satisfied.

\* \* \*

Having found by clear and convincing evidence that each *Sell* factor is satisfied, the court orders that Howell be involuntarily medicated in the manner described in the proposed treatment plan. Govt. Exh. 3 at 21-25. The Butner staff shall report to the parties and the court on Howell's progress by June 27, 2017.

April 25, 2017

United States District Judge